IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

WHOLESALE GADGET PARTS, )
INC., )
 )
      **Plaintiff,** )
 )
v. ) Case No. 17-CV-4-JHP-TLW
 )
GLOBAL CELLULAR, INC. and )
CELLAIRIS FRANCHISE, INC., )
 )
      **Defendants.** )

## OPINION AND ORDER

Before the Court is Defendants' Motion to Compel Mediation and Stay Proceedings or, Alternatively, Motion to Dismiss Under the Doctrine of Forum Non Conveniens (Doc. No. 11). Plaintiff opposes the Motion (Doc. No. 13). For the reasons explained below, Defendants' request to stay proceedings and compel mediation is **GRANTED**.

### BACKGROUND

**I.    Factual and Procedural Background**

Plaintiff Wholesale Gadget Parts ("Wholesale") and Defendant Global Cellular, Inc. ("Global") entered into a Purchaser-Seller Agreement ("Agreement") in 2012 (Doc. No. 2-1, Exh. A (Agreement)). Pursuant to the Agreement, Wholesale produces and supplies cellular telephone accessories and other related products to Global. (*See id.* § 2(A)). Global then sells those products to

franchisees of Defendant Cellairis Franchise, Inc. ("Cellairis"), as well as other distributors and retailers. (*See id.* § 2(B)). While not a signatory to the Agreement, Cellairis is an intended third party beneficiary of the Agreement "with full power and authority to enforce its terms." (*Id.* § 24).

In this case, Wholesale alleges that Global breached the Agreement by failing to pay Wholesale as agreed under the terms of the Agreement. (*See* Doc. No. 2-1 (Petition), ¶ 9). Specifically, Wholesale alleges Global failed to pay invoices for seventy-four orders placed between October 29, 2015, and December 1, 2015, totaling $209,373.58. (*Id.* ¶¶ 9, 12). Wholesale further alleges that the invoices have now remained unpaid for over one year. (*Id.* ¶ 10).

Wholesale filed suit against Global and Cellairis (together, "Defendants") in the Tulsa County District Court on December 15, 2016, asserting claims for (1) breach of contract against Global for failure to pay the invoices and (2) unjust enrichment against Cellairis for receiving and marketing products for which Wholesale has not been paid. (Doc. No. 2-1 (Petition)). Defendants subsequently removed the case to this Court. (Doc. No. 2). In their Verified Answer, Defendants raise an affirmative defense that many of the parts that Wholesale delivered were defective, which they allege entitled Defendants to an offset for the damages claimed by Plaintiff. (Doc. No. 8, at 4 (Third Affirmative Defense)).

## II. Relevant Terms of the Agreement

The Agreement is governed by Georgia choice of law and the Georgia Uniform Commercial Code. (Agreement, § 21). The Agreement contains a detailed dispute resolution process in Section 22. That provision begins: "The parties desire not to engage in court proceedings, but rather to have disputes resolved through face-to-face meetings, mediation and, if necessary, legal proceedings." (*Id.* § 22). Section 22 thereafter details the process for dispute resolution, including requirements for a face-to-face meeting and mediation as prerequisites for bringing suit. Subsection (a) addresses the face-to-face meeting requirement for "any claim relating to an alleged breach of this Agreement other than issues arising from Section 2(K)." Section 2(K), titled "Payment," contains its own meeting requirement in Subsection (iv):

> In the event either party notifies the other party of any billing or payment dispute, the parties within three (3) Business Days shall in good faith communicate by telephone and attempt to resolve any such discrepancy. In the event a telephone conversation does not resolve the billing or payment dispute, then the parties shall have a face-to-face meeting held at Global's office within ten (10) days after the failure of the telephone conference. In the event the face-to-face meeting is unsuccessful then, and only after the face-to-face meeting has occurred, [Wholesale] shall have the right to terminate this Agreement without penalty to either party and except for any continuing obligations specified in Sections 4, 9, 10, 21, and 22, the parties shall be relieved of any obligations, conditions, or limitations.

Section 22(b) provides the procedure that occurs "if the face-to-face meeting does not resolve the dispute between the parties":

the parties shall submit to mediation for a minimum of eight hours and which shall take place within twenty days after the face-to-face meeting (to the extent a meeting occurs); (i) in Georgia before a mediator of [Wholesale's] choice if [Wholesale] brings a claim against Global; or alternatively, (ii) in Oklahoma before a mediator appointed by Global if Global brings a claim against [Wholesale]. The mediator shall be a neutral person. Each party shall pay 50% of the costs of any mediation (though each party will be solely responsible for any respective attorney's fees and costs). The parties jointly agree that no mediation will be required to extend beyond eight hours. Any party may be represented by lawyers and may, with permission of the mediator, bring persons appropriate to resolving the claim. In the event that the non-proposing party does not appear at the mediation, then the proposing party may immediately proceed to court.

If the mediation fails, then Section 22(c) provides the requirements for court proceedings "in the event [Wholesale] seeks injunctive relief":

The Georgia State Courts for Fulton County, Georgia, or if such court lacks jurisdiction, the U.S. District for the Northern District of Georgia, shall be the exclusive venue and exclusive proper forum in which to adjudicate any case or controversy arising either, directly or indirectly, under or in connection with this Agreement and Global and [Wholesale] further agree that, in the event of litigation arising out of or in connection with this Agreement in these courts, they will not contest or challenge the jurisdiction or venue of these courts.

Further, "in the event Global seeks injunctive relief," the parties agree that "the exclusive venue and exclusive proper forum for litigating such claims would be the "Oklahoma State Courts for Tulsa County, Oklahoma applying the laws of the State of Georgia, or if such court lacks jurisdiction, the U.S. District Court for the Northern District of Oklahoma." (Agreement, § 22(c)).

Subsection 2(K)(v) grants Global certain alternative means of obtaining relief when certain requirements are met:

> (v) **In the event an Amount Due remains unpaid after ninety (90) days ("Defaulted Amount Due") and the Defaulted Amount Due less the sum of all unresolved Billing Disputes and all unresolved Shipping Disputes exceeds Ten Thousand Dollars ($10,000), then [Wholesale] may terminate this Agreement or part of this Agreement and [Wholesale] will be immediately relieved of any continuing obligations specified in <u>Section 2 Subsection G and Section 4 to the extent that it conflicts with Section 2 Subsection G</u>.**

(bold and emphasis in original). Section 2(G) provides that Wholesale agrees "to strictly observe a non circumvention requirement" and agrees "not to sell any products (including the Products) directly or indirectly (except through Global) to the Retail Outlets, except in accordance with this Agreement." Section 2(G) further states that Wholesale "understands and agrees that this term is a material part, indeed the heart, of this Agreement."

Finally, Section 23 of the Agreement governs amendments generally: "Neither the Agreement nor any of its provisions may be waived, modified or amended except by an instrument in writing signed by the parties hereto."

### III. Wholesale's December 8, 2016 Letter to Global

On December 8, 2016, Wholesale sent Global a letter regarding Global's alleged breach of Subsection 2(K)(v) of the Agreement (the "Letter"). (Doc. No. 2-1, Ex. B (Letter)). In the Letter, Wholesale stated that, pursuant to Subsection

5

2(K)(v), it was exercising its right to terminate "the following part of the Contract: Sections or Subsections: 2.K.(iv); 9.a; 12; 21 (except the first and last sentence thereof); 22.b; and 22.c(iv)." (Letter at 1). In other words, Wholesale purported in the Letter to terminate (1) the requirement for a telephone communication, face-to-face meeting, and mediation as prerequisites to litigation, (2) Georgia choice of law, and (3) exclusive jurisdiction of Georgia courts in the event Wholesale seeks injunctive relief. Wholesale further "reserve[d] the right to terminate additional parts, Sections or Subsections of the Contract in the future" unless and until the breach was cured. (*Id.*).

## IV. Global's Motion

In the present Motion, Defendants do not dispute that the threshold requirements of Subsection 2(K)(v) were satisfied by Global's alleged failure to pay invoices totaling $209,373.58 for over one year. However, Defendants argue that Subsection 2(K)(v) does not give Wholesale "unbridled power" to terminate any portion of the Agreement as it sees fit, even if the threshold requirements are met. (Doc. No. 11, at 6). Instead, Defendants argue the "part of the Agreement" that Subsection 2(K)(v) authorizes Wholesale to terminate is *only* Section 2(G). Therefore, Defendants ask this Court to enforce the dispute resolution process outlined in the Agreement and stay the action while the parties mediate their dispute. In the event mediation is unsuccessful or the Court declines to issue a

stay, Defendants request that this action be dismissed under the doctrine of *forum non conveniens*. Wholesale opposes both requests and argues that it is relieved from its obligations to engage in mediation or to bring suit in a Georgia court, because it validly terminated those provisions of the Agreement by letter on December 8, 2016. (*See* Doc. No. 2-1 (Petition), ¶ 11 & Exh. B (Letter); Doc. No. 13).

## DISCUSSION

Defendants first request issuance of a stay while the parties comply with the dispute resolution process outlined in the Agreement. For purposes of Defendants' motion, the central issue is whether Wholesale's Letter effectively modified Wholesale's obligation to engage in dispute resolution steps pursuant to the Agreement. The Court concludes it did not.

The relevant principles of contract interpretation are the same under both Oklahoma and Georgia law. "If the terms of a contract are unambiguous, clear and consistent, they are accepted in their plain and ordinary sense and the contract will be enforced to carry out the intention of the parties as it existed at the time it was negotiated." *S. Corr. Sys., Inc. v. Union City Pub. Sch.*, 64 P.3d 1083, 1088 (Okla. 2002) (citations omitted). *See Caswell v. Anderson*, 527 S.E.2d 582, 582 (Ga. Ct. App. 2000) ("Where contract language is unambiguous, no construction is necessary and the court must simply enforce the contract according to its clear

7

terms.") (citation omitted). In determining the interpretation of a contract, the Court must not "create an ambiguity by using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on the provision." *S. Corr. Sys., Inc.*, 64 P.3d at 1089 (citations omitted). *See Jett v. Jett*, 727 S.E.2d 470, 472 (Ga. 2012) ("It is the function of the court to construe the contract as written and not to make a new contract for the parties.") (quotation omitted).

Moreover, "[i]t is well settled that effect should be given, if possible, to every word, phrase, clause, and sentence of a contract." *Cities Serv. Gas Co. v. Kelly-Dempsey & Co., Inc.*, 111 F.2d 247, 249 (10th Cir. 1940) (citation omitted). *See* 15 Okla. Stat. § 157 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."); *Carroll v. Bd. of Regents of Univ. Sys. of Georgia*, 751 S.E.2d 421, 424 (Ga. App. 2013) ("a contract must be interpreted to give the greatest effect possible to all provisions rather than to leave any part of the contract unreasonable or having no effect. And, one of the most fundamental principles of construction is that a court should, if possible, construe a contract so as not to render any of its provisions meaningless.") (quotation omitted).

Wholesale's Letter purports to terminate several sections of the Agreement unilaterally. However, such action would not comport with the plain language of the Agreement for several reasons. First, the provision upon which Wholesale

relies in the Letter, Subsection 2(K)(v), does not authorize Wholesale to terminate *any* part of the Agreement. Subsection 2(K)(v) provides that if the Amount Due reaches a certain threshold and is at least 90 days overdue, then Wholesale is authorized to terminate either (1) "this Agreement" or (2) "part of this Agreement and [Wholesale] will be immediately relieved of any continuing obligations specified in <u>Section 2 Subsection G and Section 4 to the extent that it conflicts with Section 2 Subsection G</u>."[1] A fair reading of this entire provision indicates that the "part of this Agreement" Wholesale may terminate is Section 2(G), which prohibits Wholesale from selling the Products directly or indirectly to the Cellairis branded business units. The Agreement describes Section 2(G) as a "material part, indeed the heart, of this Agreement." Accordingly, Subsection 2(K)(v) allows Wholesale to elect to continue performing under the Agreement *and* sell the Products directly or indirectly to Cellairis branded business units in the event the threshold requirements are met. This reading is logical and accounts for the underlining in the description of the section that Wholesale is authorized to terminate.

Second, Wholesale's ability to excise select provisions of the Agreement would contradict Section 23 of the Agreement, which provides in its first sentence, "Neither the Agreement nor any of its provisions may be waived, modified or

---

[1] Section 4 pertains to confidential information and trade secrets.

amended except by an instrument in writing signed by the parties hereto." This plain, unambiguous language indicates that Wholesale is not authorized to effectively re-write the terms of the Agreement by "terminating" select sentences and provisions, even if the threshold requirements of Subsection 2(K)(v) are met.

Third, Wholesale's unilateral ability to terminate the dispute resolution process outlined in the Agreement would not align with the statement of intent in Section 22:

> The parties desire not to engage in court proceedings, but rather to have disputes resolved through face-to-face meetings, mediation and, if necessary, legal proceedings. The parties view mediation as often being the most cost effective way of resolving disputes. The parties believe that it is important to resolve all disputes efficiently and professionally and to return to business as soon as possible.

Wholesale raises several arguments in its Response brief, none of which the Court finds persuasive. First, Wholesale argues Subsection 2(K)(v) indeed grants Wholesale the right to modify the agreement by unilaterally terminating select parts, because it first requires Global to amass a past due amount for unpaid products exceeding $10,000 that remains unpaid for over 90 days. Wholesale argues it specifically negotiated this clause in order to protect itself from risk of nonpayment. However, the Court must focus on the language of the Agreement itself, which does not indicate such broad power was granted in the event of a significant default by Global. *See S. Corr. Sys., Inc.*, 64 P.3d at 1088; *Caswell v. Anderson*, 527 S.E.2d at 582.

Second, Wholesale points out the language in Subsection 2(K)(v) was placed in the Agreement using a bold font for the purpose of emphasizing the serious consequences Global could suffer if it significantly defaulted on its obligation to pay for purchased products. Wholesale interprets those consequences to include three nonexclusive options available to Wholesale in the event of a significant default: Wholesale may (1) terminate the entire agreement, (2) terminate any part of the Agreement, and (3) be immediately relieved of its non circumvention obligations under Section 2(G). Wholesale's interpretation of Subsection 2(K)(v) focuses on the bolding of that paragraph but fails to account for the underlining of the key portion of the section: "<u>Section 2 Subsection G and Section 4 to the extent it conflicts with Section 2 Subsection G</u>." As Defendants point out, the typeface of Subsection 2(K)(v) supports Defendants' interpretation over Wholesale's—that is, if the Amount Due reaches a certain threshold and is overdue for a certain period of time, Wholesale may elect to continue performing under the Agreement *and* sell the Products directly to Cellairis branded business units.

Third, Wholesale points out that in exercising its termination right under Subsection 2(K)(v), Wholesale "did not use the rights granted under the contract in a harsh or oppressive way." (Doc. No. 13, at 3). However, Wholesale's representation here suggests a recognition that its interpretation could lead to absurd results. Indeed, as Defendants point out, under Wholesale's interpretation

11

of the Agreement, it is unclear what the terms of the Agreement would be if Defendants cured the breach.

Finally, Wholesale fails to address the language of Section 23, which requires modifications to the Agreement to be made in a writing signed by both parties. Wholesale's reading of Subsection 2(K)(v) would render Section 23 meaningless, because it would permit Wholesale to modify any part of the Agreement unilaterally. Section 23 plainly prohibits such unilateral modifications beyond the narrow exceptions carved out in other parts of the Agreement.

In light of the plain, unambiguous language in Subsection 2(K)(v) and Section 23, and the statement of intent to engage in specific dispute resolution methods in Section 22, the Court concludes Wholesale was not authorized to terminate Subsections 2(K)(iv), 9(a), 22(b), or 22(c)(iv), or parts of Section 21. As a result, the parties are required to engage in the dispute resolution process outlined in the Agreement. The Court will stay all proceedings in this case until the parties have completed this dispute resolution process.

Because the Court herein issues a stay and orders the parties to engage in the dispute resolution process outlined in the Agreement, the Court will not address Defendants' alternative request for dismissal under the doctrine of *forum non conveniens*.

## CONCLUSION

For the reasons detailed above, Defendants' Motion to Compel Mediation and Stay Proceedings is **GRANTED**. This case is hereby **STAYED** pending conclusion of the dispute resolution process outlined in the Agreement. The parties shall file a status report every 90 days and shall promptly notify the Court of the resolution of the underlying disputes pursuant to the dispute resolution process outlined in the Agreement.

_____
James H. Payne
United States District Judge
Northern District of Oklahoma